IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE: JANICE WOLK GRENADIER )))) Case No. 1:18-mc-10–HEH

## MEMORANDUM OPINION
(Following Show Cause Hearing)

This show cause proceeding is the culmination of a protracted history of frivolous, and at times indignant, legal actions filed by Janice Wolk Grenadier ("Grenadier"), in the United State District Court and the United States Bankruptcy Court for the Eastern District of Virginia. Her filings have cast a wide net encompassing claims against forty-two active or retired federal judges from the Eastern District of Virginia, the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for the District of Columbia, the United States District Court for the District of Columbia, and the Circuit Court for the City of Alexandria. She has also filed complaints against a host of federal and state officials, ranging from the clerk of the Alexandria Circuit Court to the President of the United States and members of the President's cabinet. Each of the lawsuits filed by Grenadier has been dismissed as facially meritless, save for two which are stayed pending this proceeding and one that was only just filed.

Grenadier is presently before the Court on an Order to Show Cause issued April 12, 2018 (ECF No. 2), requiring her to show cause why she should not be held in contempt for failing to obey orders of the Bankruptcy Court to abstain from refiling bankruptcy actions without cause and, despite numerous admonitions, for continuously

filing frivolous and unmeritorious pleadings in the District Court. The Order to Show Cause was personally served on Grenadier by the U.S. Marshals Service on April 18, 2018.

This show cause proceeding was initially premised on a Certification from the U.S. Bankruptcy Court to this Court (the "Certification") recommending criminal contempt proceedings against Grenadier for failing to abide by orders of the Bankruptcy Court, specifically a two-year bankruptcy filing bar imposed against her on October 13, 2016. (*See* Bankr. Case No. 17-13354-BFK, ECF No. 48.) According to the Certification, this filing injunction was imposed as a result of her continuing failure to abide by the statutory requirements for filing Chapter 13 bankruptcy, namely not having regular income as required by 11 U.S.C. § 109(e). The Bankruptcy Court's injunction did not impose an absolute filing prohibition; its language left the door ajar by allowing Grenadier to file a Chapter 13 action during that two-year period, if such action was accompanied by a motion and affidavit representing her ability to satisfy all requirements of Chapter 13, including regular income.

As reflected in the Certification, Grenadier's 2016 bankruptcy filing, which resulted in the Bankruptcy Court's imposition of the two-year filing injunction, was affirmed by the United States District Court. Her appeal to the United States Court of Appeals for the Fourth Circuit was dismissed. The Certification further revealed that on October 24, 2017, less than one year after the two-year bar was imposed, Grenadier filed another bankruptcy case, in violation of the two-year filing bar. Grenadier did not file the

requisite motion and affidavit and, in fact, acknowledged to the Court that she still lacked employment and regular income, a prerequisite to Chapter 13 bankruptcy.

The Certification also noted that Grenadier has now filed ten bankruptcy cases which fail to satisfy the statutory requirements of Chapter 13, despite repeated admonitions. According to the Certification, Grenadier has filed an additional eight actions in the District Court that have all patently failed to state a plausible claim. In fact, as the evidence will reveal, most are largely incomprehensible.

After thoroughly reviewing the reasoning of the Bankruptcy Court and its recommendation, while firmly grounded, this Court decided to adopt a more measured approach and consider a formal pre-filing injunction requiring leave of court before any pleadings are filed, along with possible monetary sanctions under Rule 11, in lieu of contempt at this stage. The object of the immediate proceeding is to ensure that Grenadier obeys the orders of this Court. This Court will reserve the Bankruptcy Court's recommendation of criminal sanctions as a last resort.

## I. The Show Cause Hearing

Pursuant to the aforementioned Order to Show Cause, this Court held a hearing on May 22, 2018, beginning at 10:00 a.m., at the U.S. District Courthouse in Alexandria, Virginia.[1] The Order to Show Cause advised Grenadier that she may wish to engage

---

[1] On May 10, 2018, after receiving notice of the impending show cause hearing, Grenadier filed what she styled a "Counterclaim/Cross Complaint Civil Complaint" against the undersigned United States District Judge, the President of the United States, the Attorney General of the United States, all United States District Court Judges and United States Magistrate Court Judges of the Eastern District of Virginia, all Judges of the United States Court of Appeals for the Fourth Circuit, all Judges of the United States District Court for the District of Columbia, the Chief Judge of the United States Court of Appeals for the District of Columbia, several of the United States Bankruptcy Court Judges for the Eastern District of

3

counsel prior to the hearing and that, because show cause hearings are not criminal in nature, the right to counsel was not otherwise guaranteed. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004). Grenadier chose to appear *pro se*. To facilitate the presentation of any evidence necessary to authenticate court records and to represent the interests of the Court in the proceeding, Susan Podolsky, Esquire ("Podolsky"), a member of the bar of this Court, was appointed as counsel, absolving the undersigned judge of the need to both advocate and adjudicate the matter. (*See* ECF Nos. 3, 4.)

After thoroughly explaining to Grenadier the procedural posture of the hearing and the purpose underlying the show cause proceeding,[2] the Court asked for opening statements. Podolsky presented first. In the course of outlining Grenadier's filing

---

Virginia, the Director of the FBI, and all members of the Virginia Bar Association disciplinary committee. (ECF No. 6.) In addition to alleging that the named judges were acting in violation of the Virginia and United States Constitutions by conspiring to obstruct justice, in violation of 42 U.S.C. §§ 1981 and 1983, she also alleged that the named defendants conspired to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Grenadier subsequently submitted the same document as a freestanding Complaint, accompanied by a Motion for Leave to Proceed *In Forma Pauperis. Grenadier v. Hudson, et al.*, 1:18cv571 (E.D. Va. May 15, 2018).

The Court declines to find that this newly attempted lawsuit creates grounds for the undersigned judge's recusal. While 28 U.S.C. § 455 requires that a judge recuse himself if he is a party to the proceeding, courts have routinely held that, where a litigant files an action against the presiding judge in another ongoing action, recusal is not mandated. *See United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) ("A judge is not disqualified by a litigant's suit or threatened suit against him, or by a litigant's intemperate and scurrilous attacks."); *see also United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007); *Azubuko v. Royal*, 443 F.3d 302 (3d Cir. 2006); *United States v. Watson*, 1 F.3d 733 (8th Cir. 1993).

[2] Specifically, for Grenadier to show cause why a system of prefiling review should not be imposed, why her *in forma pauperis* privileges should not be revoked or limited, and whether Rule 11 sanctions were appropriate. (*See* Show Cause Hr'g Tr. ("Hr'g Tr.") 6:8–21.)

history, Podolsky offered the following certified records of the District Court and the Bankruptcy Court, without objection by Grenadier[3]:

- The Docket Reports of 24 civil cases filed by Grenadier or opened as a result of her appeals from orders of the Bankruptcy Court[4] and of 2 civil cases in which she filed a Motion to Intervene[5] (Exs. A2–A27);

- The "Disposition Orders" from 23 of those cases[6], and the Orders denying Grenadier's two Motions to Intervene (Exs. A28–53);

- Grenadier's two Motions to Intervene, her Complaint in Civil Case No. 1:17cv1106, and her Amended Complaint in Civil Case No. 1:18cv571, as exemplars of her filings (Exs. A54–57);

- The Docket Reports of 14 bankruptcy cases filed by Grenadier[7] (Exs. B2–B15);

- The Disposition Orders for all those cases (Exs. B16–B29);

- Motions, a "Demand," and a Letter filed by Grenadier in various cases, as exemplars of her behavior during the pendency of these actions (Exs. B30–B36);

- Judge Kenney's Order to Show Cause in Bankr. Case No. 17-11024 (Ex. B37); and

---

[3] Grenadier did "object" once when Podolsky was presenting the records, but only to argue that "the one thing no one has done is look at why I have [filed all of the referenced actions], or looked at the evidence as to why I have done it." (Hr'g Tr. 11:17–11:23.) After the Court informed Grenadier that she was getting into the merits of her position and that the she would have a chance to argue her case when it was her turn, Grenadier made no further challenge to the records. When the Court later asked Grenadier if there was any reason the records could or should not be admitted into evidence, she responded, "[T]hese are my documents. I've put them into the record, and I'm proud of them. And I have absolutely no problem with them being a part of the record. . . . I am very proud of everything I have done. I think that the orders speak for themselves." (*Id.* at 20:3–21:7.)

[4] Civil Case Nos. 1:11cv1136, 1:14cv827, 1:15cv1497, 1:16cv1396, 1:16cv1397, 1:16cv1436, 1:16cv1437, 1:16cv1448, 1:16cv1461, 1:16cv1462, 1:16cv1482, 1:17cv166, 1:17cv280, 1:17cv819, 1:17cv925, 1:17cv1106, 1:17cv1265, 1:17cv1363, 1:17cv1364, 1:17cv1403, 1:17cv1404, 1:17cv1498, 1:18cv35, 1:18cv571.

[5] Civil Case Nos. 1:17cv116, 1:17cv120.

[6] All but Civil Case No. 1:18cv571, which remains pending.

[7] Bankr. Case Nos. 98-10042, 99-81080, 00-11592, 07-11602, 08-11841, 09-11348, 12-12665, 13-10891, 16-01190, 16-13028, 17-01106, 17-01107, 17-01124, 17-13354.

- Judge Kenney's Certification to the District Court for Criminal Contempt Proceedings (Ex. B38).

This collection of records creates a striking snapshot of Grenadier's history of litigation. She has participated in forty cases, thirty-eight of which she initiated herself. Those thirty-eight cases have generated over 1,500 docket entries, representing the staggering amount of Court time, energy, and resources that have been required to deal with Grenadier's filings. (Hr'g Tr. 10:19–11:8.) Individual filings within that collection of cases range from 5 pages to over 400 pages. (*Id.* at 13:8–12.) Even those filings lacking in any merit whatsoever consume Court personnel time, given that the *pro se* motions and notices must be received and scanned and docketed before they ever get to the presiding judge for disposition. (*Id.* at 11:9–16.) Grenadier's behavior has, in short, created a mountain of work for this Court and others.

Podolsky then proceeded to address the nature of Grenadier's filings. As demonstrated by the records before the Court, a survey of Grenadier's various complaints and motions reveals a pattern of retaliatory filing. After Grenadier receives an adverse ruling, she frequently files a "cross claim" or new complaint against the presiding judge and the court personnel involved, often in addition to filing a motion for reconsideration of the underlying decision, an appeal, or both. (*Id.* at 13:23–14:20 (citing Civil Case Nos. 1:17cv1106, 1:15cv1497 and Bankr. Case No. 17-01124 as examples); *see also* Exs. B30–36.)

Moreover, Podolsky highlighted the fact that none of Grenadier's civil actions have been found to have had merit. Her bankruptcy appeals have been almost uniformly

dismissed for failure to prosecute[8] (Exs. A28–A35, A37, A39–A42), and her freestanding civil actions have been dismissed as meritless or frivolous[9] (Exs. A43, 44, 46, 47, 49, 50, 53), with all ancillary motions denied as meritless (see Ex. A44 n.1). Similarly, Grenadier's Motions to Intervene in two independent civil actions were both denied as unfounded. (Exs. A51, A52.) And even when a case has been dismissed as meritless or frivolous, Grenadier persists in filing motions and cumulative appeals, none of which have prevailed to date. In Civil Case No. 1:14cv827, for example, Grenadier continued to file miscellaneous motions for reconsideration, appeals, and motions to take action against Judge Brinkema for over two and a half years after Judge Brinkema dismissed the action itself. (Ex. A18, Docket Report.)

Podolsky also pointed to Grenadier's thirty-three post-dismissal filings in Civil Case No. 1:14cv827 to demonstrate the burden that Grenadier has placed on the Court. Each judge faced with a complaint or appeal from Grenadier has had to sift through meandering allegations of wide-reaching conspiracy and wrongdoing, allegations which time and again judges have found to be incoherent, lacking in a sufficient basis in fact, or simply failing to state a cognizable claim. As represented by Podolsky from her survey of court records, each judge and court has worked carefully to address the claims—such as can be identified—that have come before them. This takes time, especially where some of Grenadier's filings are more than 400 pages long. Additionally, court support

---

[8] The exceptions were Civil Case Nos. 1:17cv1265, where the judge simply dismissed the appeal as frivolous on its face (Ex. A36), and 1:17cv1364, where the undersigned judge dismissed the appeal as untimely (Ex. A38).

[9] With the exception of Civil Case No. 1:17cv280, where the judge dismissed the action for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Ex. A48.)

7

staff must devote countless hours to reviewing, scanning, and processing Grenadier's *pro se* filings. (*See* Banke Decl. ¶¶ 3, 9; Counts Decl. ¶¶ 3, 9.) In short, "in terms of sheer volume, the consumption of resources by the Court [in addressing Grenadier's filings] is significant." (Hr'g Tr. 19:5–6.)

After hearing this summary of the evidence from Podolsky, the Court accepted the proffered records into evidence pursuant to Federal Rules of Evidence 902 and 1006. The Court then invited Grenadier to make her opening statement, though it cautioned her that the purpose of the hearing was not to revisit the merits of previously decided cases, and that she was to constrain her allocution to whether or not her behavior constituted an abusive pattern of filing. (*Id.* at 22:1–20.) Grenadier asked if she might prepare her own evidence for admission, and the Court said yes but again asserted that it would only hear evidence that related to whether or not the previously introduced court records were authentic and accurate. (*Id.* at 23:5–10.) Grenadier responded that "It all relates to everything." (*Id.* at 23:11.)

From the outset of her opening statement, Grenadier embraced the fact that she had filed "quite a bit of documents," and stated that she had done so "because we have a judicial system that seems to be two-tier. . . . One, if you have money and power, and one if you're poor and you've been blackballed by the old boys network, which is what I have been." (*Id.* at 24:3–11.) Grenadier then proceeded as follows:

> I had married David Grenadier in 1988. We met in 1985. I got into some real estate dealings with him and his mother, divorce lawyer Ilona Grenadier, starting in 1988 – '86. Ilona Grenadier started a scheme and started lying on February 14, 1986. I wouldn't realize that lie until 2014. We were – Judge Grenadier died in 1985. She married, six

8

months later or seven months later, Jerry Heckman, who was Judge Grenadier's first cousin. She was trustee using forged trust agreement for the Sonia Grenadier trust out of her law firm where she sold real estate and she stole money. And she tried to—in her weave of things, was involved in all of that until 2014 when she sold off the last property. She—I would like to—I have entered into the record, and it's most likely there, but I'd like to enter in the record the documents.

(*Id.* at 24:12–25:3. )

At this point the Court interjected to remind Grenadier that the only question before it was whether or not the documents certified by the Clerk are correct, "[b]ecause . . . many judges of this Court have found that the lawsuits aren't moored in fact. . . . And that you have repeatedly filed these frivolous filings, and you've wasted the time of the U.S. District Court and the Clerk's office. That's what it's all about." (*Id.* at 25:4–13.) Grenadier responded with "Your Honor, that's not true. The problem is we have a set of judges who have made the decision that they are going to protect divorce lawyer Ilona Grenadier Heckman. And the documents show that." (*Id.* at 25:14–18.) Grenadier then described how Judges Hilton and Clark were biased against her and admitted as much through their recusals, and that Judge Haddock told her "how much he loved Ilona and how [Grenadier] wasn't going to get a fair trial," and that's why she shifted her filings from state court to federal court. (*Id.* at 25:20–26:8.) She further alleged that Judge Clark held a financial interest "in every property"[10] and that he jailed Grenadier illegally, ordering that she be held in solitary confinement for fourteen days over unpaid legal fees. (*Id.* at 26:9–12.) She continued:

---

[10] Presumably, every property that was involved in Grenadier's dispute with Ilona Grenadier Heckman.

9

> That didn't stop them there. No. They hired this man. Let the record show this man's name is Mark Stuart. He will be—his picture will be in one of my exhibits. Mark Stuart's job was to rape me, drug me, plant inappropriate pictures on me. He was hired with John Tran through Dimuro Ginsburg. He was also at the shootings that the senator—congressmen and senators on Monroe Avenue.
>
> . . .
>
> In my neighborhood, which is just right around the corner here, there have been five hits. Those five hits of people being murder—murdered in 1997. My ex-husband had already decided he was leaving me. He was supposed to take me to the airport. When I got in the cab, he was on the phone yelling at me because he sent a cab instead. The cab driver offered for $5,000 it could be taken care of, but he said well maybe we could do it for $2,000. And as I got out of the cab, he handed me a phone number and I threw it away. If I hadn't thrown away that phone number, do you think Nancy Dunning might be alive today?
>
> Because you know what? That happened in September of 1997. In March of 1998, she came to check on me three times. Nancy Dunning and I were not friends. We were acquaintances. But my brother-in-law was the sheriff's best friend, best, you know, underling or whatever. Whatever sheriff—I don't know the whole, how it works. You know, he was the sheriff, elected sheriff, and Brian was right underneath him.
>
> In 2003, Nancy Dunning opened her door and was murdered. Ruthanne, the daughter, was murdered. And when the pictures came out, it looked like this gentleman. When I contacted Longhorn, I contacted the police, just as when I contacted the City of Alexandria police about this guy, I was told they're not allowed to take police reports from me. They're not allowed to take police reports because of Randy Sengel at the time was the Commonwealth Attorney.

(*Id.* at 26:13–28:9.)

Grenadier continued in this vein for some time more, until the Court interrupted to reiterate that the facts she was reciting had no bearing on the matter presently before it—they had all been considered by the judges facing her prior filings and deemed unmoored from reality. The undersigned attempted to impress on Grenadier twice more that the purpose of the day's proceedings was to evaluate whether a system of pre-filing review

would be appropriate. (*Id.* at 28:5–14, 35:23–36:7.) This had no apparent effect, however, as Grenadier continued to detail the injustices she perceives in this country's judicial system. When the Court attempted to bring the hearing to close, having determined that Grenadier would not address the question of frivolity but wanted to essentially re-litigate all the claims she raised in all of her prior cases, Grenadier announced that she felt that she had not been heard fairly, and that she challenged the Court's jurisdiction over the matter. (*Id.* at 41:8–18.)

Particularly, Grenadier alleged that the Court has "several conflicts in [his] background and with [Grenadier]." (*Id.* at 41:18–20.) Grenadier did not elaborate on this claim beyond stating that she "was in the court as second chair with Rhetta Daniel."[11] (*Id.* at 41:24–25.) The Court infers, however, that Grenadier's jurisdictional challenge and allegation of bias both mirror those raised in her appeals of various orders by this Court. (*See, e.g.*, Notices of Appeal 1:17cv1106, ECF Nos. 15, 23, 24, 37.) As discussed above, *supra* n.1, the Court finds Grenadier's allegations to be neither grounded or otherwise made in good faith, nor sufficient cause for recusal or divestiture of jurisdiction. *See Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) (parties must overcome a "high bar" to show that "predispositional recusal" is appropriate); *see also Liteky v. United States*, 510 U.S. 540, 554–56 (1994).

---

[11] Rhetta Daniel had a hearing on a wholly unrelated matter before this Court; Grenadier attended the hearing and seated herself at counsel table, and the hearing started before court personnel could intervene and inform her that counsel table was reserved for litigants and their counsel only. The undersigned had no interaction with Grenadier during the hearing, and she was not introduced and did not place her name on the record at any time. It was only after the hearing and after Grenadier had departed the courthouse that the Court learned her identity.

11

In a final effort, Grenadier sought to introduce a witness to present evidence of "what's been happening in the Bankruptcy Courts and to [her] in the courts." (Hr'g Tr. 45:13–18.) For the last time, the Court reiterated that "the only issue before this Court is whether or not those orders from the Bankruptcy Court are accurate. The Bankruptcy Court judges have already made their decisions. . . . [T]hose decisions . . . are final." (*Id.* at 45:19–23.) Grenadier tried to argue that she should be allowed to reopen the issues in those cases, but the Court refused her leave to do so.

After a full half-hour of engaging directly with Grenadier and listening to her narrative, the Court determined that Grenadier was unwilling or unable to keep the subject of the hearing limited to the accuracy of her filing history as presented and to whether or not such history created a pattern of abusive filing and an unsustainable burden on the Court. The Court therefore declined any rebuttal argument from Podolsky and concluded the hearing. Because Grenadier did not offer any evidence disputing the authenticity or accuracy of the certified records that Podolsky entered into evidence, the Court accepts those as true and accurate accounts of Grenadier's filing history and adopts the litigation summary recounted above.

## II. Discussion

As the Court stated in its Order to Show Cause and numerous times to Grenadier during the Show Cause Hearing, the issue before the Court is to determine what manner of sanction is appropriate to address her abuse of the judicial system. Having determined that neither civil nor criminal contempt is appropriate at this juncture, the Court has

before it the options of imposing a pre-filing injunction, suspending Grenadier's *in forma pauperis* privileges, and imposing Rule 11 sanctions.

### 1. Pre-Filing Injunction

"The All Writs Act grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like [Grenadier]." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) (citation omitted). Although this "drastic remedy" should be used sparingly, *id.* at 817, it is appropriate in certain "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.* at 818 (quoting *Brow v. Farrelly*, 994 F.3d 1027, 1038 (3d Cir. 1993)). As established by the Fourth Circuit,

> [i]n determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* (citing *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 368–69, 370 n.8 (7th Cir. 1983); *Pavilonis v. King*, 626 F.2d 1075, 1078–79 (1st Cir. 1980). Litigants facing the imposition of this sanction must be given notice and an opportunity to be heard, and the injunction must be "narrowly tailored to fit the specific circumstances at issue." *Id.* at 818–19.

As always, the Court is mindful of Grenadier's status as a *pro se* litigant. Although *pro se* complaints merit liberal construction by the court, they must

nevertheless abide by minimum standards of rationality and specificity. Additionally, *pro se* complaints and complainants are not immune from the Court's inherent power to curb abuses of the judicial process. *See id.* at 817; *Haggins v. Tarwater*, 2013 WL 1319400, at *1 (W.D.N.C. Mar. 29, 2013) (citing *Armstrong v. Koury Corp.*, 16 F. Supp. 2d 616, 620 (M.D.N.C. 1998)).

After considering the *Cromer* factors and Grenadier's litigation history, this Court believes that the imposition of a pre-filing injunction is an appropriate measure. Grenadier has a considerable history of filing vexatious, harassing, and duplicative lawsuits, and her behavior shows no sign of abating. The fact that Grenadier continues to file substantially similar complaints espousing her conspiracy theories and attacking the integrity of the judges and others she has come into contact with, despite the repeated dismissal of those same complaints for failing to state a cognizable legal claim, demonstrates an objective lack of good faith in pursuing these duplicative actions. Further, her demonstrably retaliatory filings show a clear intent to harass. *See, e.g.*, Civil Case Nos. 1:17cv1106, 1:18cv571.

As attested to by Richard Banke and Gregory Counts, Division Managers of the Clerk's Office for the Alexandria Division of the United States District Court for the Eastern District of Virginia and of the United States Bankruptcy Court for the Eastern District of Virginia, respectively, Grenadier's behavior has consumed significant court resources. Similarly, the undersigned has devoted countless hours to wading through Grenadier's meandering claims, all of which are untethered to any actionable legal theory, and to determining how to address her unceasing stream of filings. Even the

Fourth Circuit has had to dedicate time and resources to address Grenadier's numerous appeals, none of which she has ever actually pursued beyond filing the notice of appeal itself.

In light of Grenadier's pattern of conduct and the burden it places on the federal courts, the Court finds that no other sanction would be adequate to protect the Court and other parties from this deluge of frivolous filings. Grenadier has continued to file and re-file civil actions regardless of the fact that they have nearly all[12] been dismissed as meritless. Additionally, Grenadier has demonstrated that she has no respect for purely temporal filing bars, (*see* Certification, Bankr. Case No. 17-13354-BFK, ECF No. 48), and she continues to file the same allegations against the same parties time and again, even under threat of contempt proceedings. The Court therefore "cannot ignore the obvious fact that mere dismissal of this action will not hinder [Grenadier] from initiating further similar proceedings." *Safir*, 792 F.2d at 24. "[Her] abuse of the judicial process, despite [her] subjective conviction that [s]he has suffered an unremedied injury, cannot be countenanced." *Id.* As a result, the Court finds that it lacks any other tools to restrain Grenadier's behavior, and the circumstances warrant the imposition of a pre-filing injunction to restrict Grenadier's future federal litigation.

The Court is cognizant that a pre-filing injunction must be narrowly tailored. *See Cromer*, 390 F.3d at 818. Accordingly, Grenadier shall be enjoined only from filing further *pro se* actions in federal court in the Eastern District of Virginia claiming injury resulting from (1) her marriage to and subsequent divorce from David Grenadier, (2) her

---

[12] With the exception described supra n.9

business and personal dealings with Ilona Grenadier-Heckman, (3) the decision or official action of any judge of a United States District Court or United States Court of Appeals, and (4) the various conspiracies and retaliatory actions alleged in her prior complaints that have been dismissed repeatedly as frivolous. As a result of this injunction, Grenadier may not file any new *pro se* civil actions, motions to proceed *in forma pauperis*, or any other motions, papers, or requests for relief in any civil actions in the Eastern District of Virginia pertaining to the abovementioned subjects without seeking and obtaining court approval as described in the accompanying Order. Moreover, the Clerk shall not accept for filing any of the abovementioned documents in the Eastern District of Virginia, unless Grenadier has successfully obtained court approval. All such attempted filings within the categories described above shall be reviewed by a judge for compliance with the terms described in the accompanying Order.

### 2. *In Forma Pauperis* Suspension

Having determined that a pre-filing injunction is necessary to curtail Grenadier's abusive filing practices, the Court nevertheless remains hesitant that the narrowly tailored remedy required by the Fourth Circuit shall be sufficient to curb Grenadier's desire to make a federal case out of every slight and every interaction with the judicial system. Cognizant that Grenadier's creativity when it comes to characterizing the nature of her perceived injuries may be beyond the grasp of the Court, it is additionally appropriate to temporarily revoke Grenadier's right to proceed *in forma pauperis* in the Eastern District of Virginia.

The *in forma pauperis* statute ("IFP Statute") already permits pre-filing review, of a sort; however, Grenadier has plainly abused the IFP Statute and in doing so has necessitated a disproportionate expenditure of scarce judicial resources to deal with her *in forma pauperis* motions, complaints, and the numerous filings spawned in each case. "In deciding to revoke [a litigant's] IFP status, the Court considers 'the number, content, frequency, and disposition of [the litigant's] previous filings to determine if there is a pattern of abusing the IFP privilege in [the] litigation history.'" *Ruston v. U.S. Secret Service*, 751 F. Supp. 2d 59, 61 (D.D.C. 2010) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 446 (D.C. Cir. 2007)); *see also In re Sindram*, 498 U.S. 177 (1991) (per curiam); *Blakely v. Wards*, 738 F.3d 607, 612 (4th Cir. 2013) ("We agree with the D.C. Circuit that 'our authority to deny IFP status to a [litigant] who has abused the privilege is clear . . . .'").

According to court records, Grenadier has initiated twenty-four civil actions in the last seven years, *see supra* n.4, twenty-two of which were brought in just the last two years alone. *See id.* Given that she has failed to bring a meritorious action in a single one of those cases—despite her frequently longwinded (exceeding four hundred pages in at least one instance) and scattershot attempts at stating a claim—revocation of Grenadier's right to proceed *in forma pauperis* is clearly appropriate. This revocation applies regardless of the subject matter of the proposed action. The Court hopes that this sanction prompts Grenadier to be much more judicious in deciding to bring suit, as the Court cannot continue to bear the costs of her relentless filings alone.

The only remaining question is how long such a suspension should be imposed. Courts have held that a lifetime ban on proceeding IFP is too long. *See Miller v. Donald*, 541 F.3d 1091 (4th Cir. 2008). A two-year revocation, however, should be sufficient to deter further frivolous filings by Grenadier.

### 3. **Rule 11 Sanctions**

Federal Rule of Civil Procedure 11 sets forth the requirements imposed on individuals filing documents in a federal court, the available sanctions for failing to meet those requirements, and the procedural mechanisms for imposing those sanctions. By its terms, Rule 11 applies to both attorneys and *pro se* litigants. *See* Fed. R. Civ. P. 11(a). By signing a document presented to the Court, the signatory is representing that:

> (1) [the document] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). A court may impose sanctions for a violation of Rule 11 if, after notice and a hearing, it determines that the party that violated the rule was responsible for the violation. Fed. R. Civ. P. 11(c)(1). A court may impose a sanction of "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the

reasonable attorneys' fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Ideally, the Court would have Grenadier pay for the time and resources Podolsky expended collecting and surveying Grenadier's litigation history. However, since Podolsky's appointment was the decision of the Court and there was no true "motion" filed seeking the recoupment of Podolsky's fees and expenses,[13] the Court cannot order this particular remedy. *See* Fed. R. Civ. P. 11(c)(4). Moreover, because Rule 11 dictates that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated[,]" and given that the Court has tailored two other non-Rule 11 sanctions to deter Grenadier from continuing her pattern of abusive filings, the Court ultimately concludes that Rule 11 monetary sanctions would have no additional deterrent impact upon Grenadier. The fact that Grenadier has been approved for *in forma pauperis* status in her civil actions also suggests that she would be unlikely to pay any sanction and that therefore the imposition of a fine would be a meaningless gesture.

Accordingly, upon reflection, the Court declines to impose any monetary sanctions against Grenadier at this juncture. That being said, should Grenadier resume filing frivolous actions in violation of the terms set forth in the accompanying Order upon the expiration of her *in forma pauperis* suspension, the Court will sanction her four hundred dollars ($400.00) in each case, that figure representing the filing fee of a new civil action.

---

[13] At the Show Cause Hearing, the Court did give Grenadier notice that it was considering imposing Rule 11 sanctions. However, the text of the Rule is straightforward that the particular sanction of repayment of costs and fees can only be ordered under Rule 11 upon the motion of a party. Fed. R. Civ. P. 11(c)(4).

19

Thereafter, the Court will not accept any new cases from Grenadier—even ones complying with the other terms and conditions set forth in this Memorandum Opinion and Order—until the sanction is paid in full.

### III. Conclusion

Based upon the foregoing, the Court will impose a pre-filing injunction on Grenadier, revoke her *in forma pauperis* privileges for a period of two years, and impose a prospective sanction order that will be triggered by each new frivolous action she files after the expiration of her *in forma pauperis* ban. Grenadier is hereby warned that, should her frivolous filings continue in violation of the Court's injunction and IFP suspension, such behavior may result in revived contempt proceedings, to include a potential prosecution for criminal contempt.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 2, 2018
Richmond, VA